# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CASSANDRA LORETI,**

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Case No. 2:18-cv-004
Judge James L. Graham
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Cassandra Loreti, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security disability benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case.

## I. BACKGROUND

Plaintiff filed her applications for disability insurance benefits and supplemental security income on December 30, 2013, alleging that she has been disabled since March 4, 2010. (R. at 183–95.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 146–52, 154–58.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 161–62.) Administrative Law Judge Timothy G. Keller ("ALJ") held a hearing on September 8, 2016, at

which Plaintiff, who was represented by counsel, appeared and testified. (R. at 50–83.) On November 15, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10–25.) On November 6, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–4.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY[1]

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she worked at Goodwill from March 16, 2015, until the first week of January 2016. (R. at 57–58.) She began working as a cashier and then moved to sorting clothes because "cashiering was hard[.]" (R. at 58.) She was later trained as a hanger. (*Id*.) Plaintiff worked sixteen hours a week. (*Id*.) Her 2015 tax returns reflect that she earned a total of $3,428 in wages with Goodwill between March and December 2015. (*Id.*)

Plaintiff also testified that she has bilateral hearing loss and uses hearing aids. (R. at 74.) She testified that she has "a lot" of hearing difficulties, which she described as follows:

> A [Plaintiff] Well, if you're not looking directly at me sometimes if you walk by me and say something to me, I won't hear you. My TV is loud. And it's hard for me to pronounce pronunciation and certain words because I don't hear the syllables when you're thinking about it.
>
> Q [ALJ] Do you have any difficulty distinguishing sounds if you're in an environment where there's a lot of different things going on?
>
> A [Plaintiff] Oh, yes.

(*Id*.)

---

[1] The Court limits its analysis of the evidence and the administrative decision to the issues raised in the Statement of Errors.

**B.    Vocational Expert Testimony**

John Finch testified as a vocational expert ("VE") at the September 8, 2016, administrative hearing. (R. at 78–82.) The VE testified that Plaintiff had worked as, among other things, a garment sorter / hanger at Goodwill, which is an unskilled, light-strength position. (R. at 79.) The ALJ asked the VE about Plaintiff's ability to return to her previous employment, presuming as follows:

> Q [ALJ]  If I found that Ms. Loreti was capable of lifting, carrying, pushing, pulling fifty pounds occasionally and twenty-five pounds frequently, and able to sit, stand, and walk for six hours each out of an eight-hour workday. Only occasional climbing of ladder, rope, or scaffold. And frequent stoop and crouch. No exposure to *excessive noise* and only occasional exposure to dust, fumes, and gases and she retains the ability to understand, remember and carryout simple, repetitive tasks. Able to respond appropriately to supervisors and coworkers in a task oriented setting, with only occasional public contact and occasional interaction with coworkers and able to adapt to simple changes and avoid hazards, would she be able to return to any of that *previous employment*?
>
> A [VE]  The garment sorter and hanger would match with these limitations, Your Honor.

(*Id*. (emphasis added).) Asked if there would be any unskilled work in the regional or national economy that Plaintiff could perform, presuming the same limitations, the VE testified that there would be such work available, including a hand packager, order picker, merchandise deliverer, which are all unskilled, medium strength positions. (R. at 80.)

Upon questioning by Plaintiff's counsel, the VE agreed that the term "excessive noise" used in the ALJ's first hypothetical is not a term that is defined in the Dictionary of Occupational Titles, which instead uses the terms very quiet, quiet, moderate, loud, or very loud. (R. at 81.) The VE testified that he interpreted the term "excessive noise" to mean "[v]ery loud." (*Id*.) Plaintiff's counsel asked the VE to change the hypothetical to allow for exposure to moderate levels of noise with no loud or very loud exposure to noise. (*Id*.)  The VE responded that, "I

don't think I can give you examples at that strength level with moderate noise that would fit the rest of the hypothetical." (*Id.*)

### III. MEDICAL RECORDS

On July 29, 2014, Plaintiff presented to the Columbus Speech & Hearing Center, which recorded a history of her long-standing conductive hearing loss and multiple ear surgeries. (R. at 405.) Plaintiff used in-the-ear hearing aids and she reported occasional tinnitus that is predominant in her right ear but she denied any problems with recent ear infections or dizziness. (*Id.*) Plaintiff reported that her hearing loss frequently fluctuates. (*Id.*)

An examination revealed clear ear canals and tympanic membranes that were abnormal in appearance but consistent with Plaintiff's surgical history. (*Id.*) An audiogram revealed a mild to moderately-severe degree of mixed hearing loss in the right ear. (*Id.*) Compared with Plaintiff's 2010 evaluation, right bone conduction at 4000Hz declined significantly and air conduction thresholds at 8 kHz declined bilaterally. (*Id.*) The left ear thresholds at 250 and 500 Hz improved slightly. (*Id.*) An annual evaluation was recommended to monitor hearing sensitivity and to assure continued benefit with amplification. (R. at 406.)

### IV. ADMINISTRATIVE DECISION

On November 15, 2016, the ALJ issued his decision. (R. at 10–25.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff met the insured status requirements

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?
    2.    Does the claimant suffer from one or more severe impairments?
    3.    Do the claimant's severe impairments, alone or in combination, meet or

4

through June 30, 2016, and that she had not engaged in substantial gainful activity since her alleged onset date of March 4, 2010. (R. at 12.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: an affective disorder, an anxiety disorder, mild to moderate conductive hearing loss in the ears bilaterally, right carpal tunnel syndrome, right shoulder impingement syndrome with rotator cuff tendinitis, right shoulder osteoarthritis, and right lateral epicondylitis, left knee patellofemoral joint space narrowing, right knee patellofemoral chondromalacia, metatarsalgia of the left foot, primary osteoarthritis of the ankles and feet, asthma, and degenerative disc disease of the lumbar spine. (R. at 12–13.)

The ALJ next found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13–16.) In so concluding, the ALJ noted, *inter alia*, as follows:

> Listing 2.10 requires an average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear (see 2.00B2c). Testing performed in July 2014 indicates that the claimant has mild to moderate conductive hearing loss in both ears and that she wears hearing aids (Exhibit 13F/2). She has air conduction thresholds of 8 kHz bilaterally (Id.). The treatment records do not document difficulty with communication. Listing 2.10 is not met.

---

                equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

(R. at 14.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally climb ladders, ropes, or scaffolds. She can frequently stoop and crouch. She can have no exposure to excessive noise and only occasional exposure to dust, fumes, and gases. She retains the ability to understand, remember, and carry out simple, repetitive tasks, to respond approp1iately to supervisors and co-workers in a task oriented setting with only occasional public contact and occasional interaction with coworkers. She is able to adapt to simple changes and avoid hazards.

(R. at 16.)

In reaching this determination, the ALJ stated, *inter alia*, as follows:

> In June 2016,[3] the claimant underwent audiology testing that indicated mild to moderate conductive hearing loss in the ears bilaterally, as well as the use of hearing aids (Exhibit 13F). None of her treating physicians noted in their records that the claimant exhibited difficulties with communication or that she complained of significant difficulty with her hearing aids. The limitation to environments without excessive noise accommodates the evidence of the use of hearing aids.

(R. at 20.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff is capable of performing past relevant work as a garment sorter/hanger. (R. at 23–24.) The ALJ went on to find that Plaintiff is also capable of performing other jobs existing in significant numbers in the national economy. (R. at 24.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 25.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

---

[3] The audiology testing occurred in July 2014, not June 2016. (R. at 405–06.)

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff advances two contentions of error. First, she argues that the ALJ's decision that she retains the RFC to perform past relevant work as a garment sorter/hanger is not supported by

7

substantial evidence because Plaintiff's work as a garment sorter/hanger does not constitute past relevant work. Next, she contends that the ALJ's assessment of her RFC is not supported by substantial evidence because it does not account for all of Plaintiff's hearing limitations. The Court finds this second contention of error to be meritorious.[4]

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

---

[4]Because this finding obviates the need for analysis of Plaintiff's remaining assignment of error, the Undersigned need not, and does not resolve whether this alternative base supports reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignment of error if appropriate. *Cox v. Comm'r of Soc. Sec.*, No. 2:13-cv-1203, 2015 WL 1000648, at *3 n.1 (S.D. Ohio Mar. 5, 2015).

Here, as set forth above, the ALJ determined that Plaintiff had the severe impairment of mild to moderate conductive hearing loss in the ears bilaterally. (R. at 12.) The ALJ's RFC states that Plaintiff "can have no exposure to excessive noise[.]" (R. at 16.) He acknowledged her conductive hearing loss in the ears bilaterally and went on to note that none of Plaintiff's treating physicians noted difficulties with communications or complaints that she had significant difficulty with her hearing aids. (R. at 20.) The ALJ concluded that "[t]he limitation to environments without excessive noise accommodates the evidence of the use of hearing aids." (*Id.*)

However, the ALJ fails to explain how this limitation[5] accommodates her severe impairment of conductive hearing loss in the ears bilaterally and enables her to engage in work-related activities. *See*, *e.g.*, *Larsen v. Berryhill*, No. 17-cv-641, 2018 WL 1478111, at *5 (D. Colo. Mar. 26, 2018) (reversing and remanding for further proceedings where, *inter alia*, "[i]t is not at all clear how a prohibition of working in loud environments addresses Mr. Larsen's hearing loss"); *cf. Heath v. Astrue*, No. 1:12-cv-99, 2012 WL 6913440, at *6 (D. Maine Dec. 30, 2012) ("Even assuming, as the administrative law judge found . . . that the plaintiff could communicate with no observable difficulty in visits to doctor's offices or at her disability hearing, those environments do not necessarily replicate a work environment."). "The ALJ's lack of articulation prevents this Court from conducting meaningful review to determine whether substantial evidence supports her decision. *See Reynolds v. Comm'r of Soc. Sec.*, No. 09-2060, 2011 WL 1228165, at *2 (6th Cir. Apr.1, 2011) (quoting 5 U.S.C. § 557(c)(3)(A)) ("Importantly,

---

[5] As discussed during the hearing on September 8, 2016, the term "excessive noise" is not a term that is defined in the Dictionary of Occupational Titles, which instead uses the terms very quiet, quiet, moderate, loud, or very loud. (R. at 81.) The VE testified that he interpreted the term "excessive noise" to mean "[v]ery loud." (*Id.*)

9

an ALJ must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.' The reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial review."). This Court must, therefore, remand this action for an explanation of the reasoning supporting the ALJ's RFC determination. *See*, *e.g.*, *Evans v. Comm'r of Soc. Sec.*, No. 1:10–cv–779, 2011 WL 6960619, at * 14, 16 (S.D. Ohio Dec. 5, 2011) (Report and Recommendation), *adopted*, 2012 WL 27476 (S.D. Ohio Jan. 5, 2012) (remanding where the Court was "unable to discern from the ALJ's opinion how he arrived at the RFC decision and what evidence he relied on in making that decision," explaining that "[s]imply listing some of the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the 'narrative discussion' requirement of SSR 96–8."); *Perkins v. Comm'r of Soc. Sec.*, No. 1:10–cv–233, 2011 WL 2457817, at *5–6, 9 (S.D. Ohio May 23, 2011) (Report and Recommendation), *adopted*, 2011 WL 2443950 (S.D. Ohio June 16, 2011) (same); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct.13, 2011) (remanding action "with instructions to provide a more thorough written analysis" where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]e cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support

the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

To be clear, the undersigned is not suggesting that SSR 96–8 requires a function-by-function analysis of Plaintiff's RFC. Rather, the undersigned simply concludes that the ALJ's decision must provide some explanation of how the RFC, specifically, the limitation to environments without "excessive noise," impacts her ability to engage in work-related activities. *See* S.S.R. 96–8p, 1996 WL 374184, at *6–7; *cf. Perkins*, 2011 WL 2457817, at *6 ("In rendering the RFC decision, it is incumbent upon the ALJ to give some indication of the specific evidence relied upon and the findings associated with the particular RFC limitations to enable this Court to perform a meaningful judicial review of that decision. Otherwise, the Court is left to speculate on the method utilized and evidence relied upon by the ALJ in arriving at her RFC determination.").

The Commissioner argues that substantial evidence supports the RFC but simply reiterates the ALJ's conclusory finding that a limitation to environments without "excessive noise" accommodates Plaintiff's hearing loss. (ECF No. 14 at 6–7.) The Commissioner also argues that even if Plaintiff could not perform a job with a very loud noise level, remand is not necessary. (*Id*. at 7–8.) The Commissioner contends that Plaintiff could perform her past work as a garment sorter/hanger and other medium or light jobs in environments below a "very loud" noise level. (*Id*.) However, as discussed above, "an ALJ must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" *Reynolds*, 424 App'x at 414 (internal citation omitted). "When an ALJ fails to make a determinative and necessary finding of fact in a sequential step, a reviewing court should not 'fill the gap.' The court must remand, even if the factual

determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different." *Buster v. Berryhill*, No. 3:16-CV-500, 2018 WL 1033260, at *2 (W.D. Ky. Feb. 22, 2018) (citations omitted). In short, the ALJ's lack of discussion renders this Court unable to assess the ALJ's reasoning and understand how an "excessive noise" environmental limitation in the RFC accommodates Plaintiff's serious impairment of conductive hearing loss in the ears bilaterally. *See* S.S.R. 96–8p, 1996 WL 374184, at *6–7; *Reynolds*, 424 F. App'x at 414. Accordingly, it is **RECOMMENDED** that Plaintiff's second contention of error be **SUSTAINED**.

## VII. CONCLUSION

Due to the error outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: December 21, 2018     s/ *Elizabeth A. Preston Deavers*
                             ELIZABETH A. PRESTON DEAVERS
                             UNITED STATES MAGISTRATE JUDGE